UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
EASTERN DIVISION

| | |
|---|---|
| RICHARD TIPTON, III, | ) |
| | ) Criminal Case No. 92CR68 |
| Movant, | ) Prior Civil Case No. 98CV361 |
| | ) |
| v. | ) **CAPITAL CASE** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MOTION TO VACATE CONVICTIONS UNDER 28 U.S.C. § 2255**

Movant Richard Tipton, III, by and through his undersigned counsel, hereby files this motion pursuant to 28 U.S.C. § 2255 to set aside his underlying convictions under 18 U.S.C. § 924(c). As explained below, Mr. Tipton's convictions and sentences on counts 20 and 26 must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016). Further, the vacatur of those convictions requires Mr. Tipton's resentencing by a jury whose assessment of his culpability was not influenced by the consideration of these unconstitutional offenses.

**INTRODUCTION**

On February 3, 1993, Mr. Tipton was convicted of, *inter alia*, two counts of using a firearm in relation to a "crime of violence" in violation of 18 U.S.C. §

924(c) (Counts 20 and 26).  Mr. Tipton's Section 924(c) convictions incorporated the following counts as the crimes of violence: conspiracy, as charged in Count 1 of his second superseding indictment (attached as Exhibit 1);  killing in furtherance of a continuing criminal enterprise ("CCE") as charged in Counts 17, 18, 19, 24 and 25; murder to maintain or increase position in a racketeering enterprise in Counts 21, 22, 23, 27 and 28; and maiming to maintain or increase position in a racketeering enterprise in Counts 29 and 30.  In accord with the jury's recommendation, the Court sentenced Mr. Tipton to death for three killings in furtherance of a CCE (Counts 3, 24 and 25), to life for three murders in furtherance of a CCE for which the prosecution had sought the death penalty, and to terms of years.

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *See Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States,* 136 S. Ct. at 1265.

The residual clause of Section 924(c) -- the statute under which Mr. Tipton was twice convicted -- is materially indistinguishable from the clause invalidated by *Johnson*. Indeed, at least three federal courts of appeals have already applied *Johnson* to invalidate the residual clause of another statute, 18 U.S.C. § 16(b) -- a clause that is *identical* to that of § 924(c).[1] *See United States v. Gonzalez-Longoria,* 813 F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719, 722 (7th Cir 2015); *Dimayo v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015). And relying on those circuits' reasoning, at least two district courts have held § 924(c)'s residual clause to be void for vagueness as well. *See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545, *3-*4 (E.D. Cal. 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9582736, *3 (D. Md. 2015). Mr. Tipton accordingly submits that because § 924(c)'s residual clause is void for vagueness, it cannot be constitutionally used to define a "crime of violence" for purposes of a § 924(c) conviction.

---

[1] Like § 924(c)(3), § 16 defines a "crime of violence" as:

> (a)   an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b)   any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

3

Further, when assessing Mr. Tipton's predicate offenses according to the most innocent conduct that fulfills their elements -- the approach dictated by *Taylor v. United States*, 495 U.S. 575, 600 (1990) and *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012) -- none qualifies categorically as a "crime of violence."

As Mr. Tipton's predicate offenses cannot meet the definition of crime of violence under either clause of Section § 924(c), his convictions under that statute are invalid.  His sentences for those convictions accordingly (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction. Further, Mr. Tipton is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).  Finally, Mr. Tipton's sentences of death must be set aside, as his jury's deliberations were infected by its consideration of these unconstitutional Section 924(c) convictions.

Accordingly, Mr. Tipton respectfully asks this Court to grant his § 2255 motion, vacate his § 924(c) conviction and his death sentence under § 924(j), and

4

order that he be resentenced by a jury on all counts subject to death sentencing. In support of this motion, Mr. Tipton shows as follows:

## STATEMENT OF RELEVANT FACTS

### A.     Conviction and Sentencing.

On February 3, 1993, at the conclusion of the guilt phase of his trial, Mr. Tipton was convicted of the following crimes: conspiracy to possess cocaine base with intent to distribute, 21 U.S.C. § 846 (Count 1); engaging in a CCE, 21 U.S.C. § 848(a) (Count 2); six counts of murder "while engaged in and working in furtherance of" a CCE, 21 U.S.C. § 848(e) (Counts 3, 17, 18, 19, 24, and 25, respectively); six counts of murder "to maintain or increase position in racketeering enterprise", 18 U.S.C. § 1959 (Counts 4, 21, 22, 23, 27, and 28, 29, and 30); two counts of maiming "to maintain or increase position in racketeering enterprise", 18 U.S.C. § 1959 (Counts 29 and 30); two counts of possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1) (Counts 32 and 33); and most relevant to this motion, two counts of using a firearm in relation to a crime of violence, 21 U.S.C. § 924(c) (Counts 20 and 26).

Specifically, with respect to § 924(c), the Second Superseding Indictment cited the following Counts as the predicate offenses: conspiracy, as charged in Count 1; killings in furtherance of a CCE, as charged in Counts 17-19 and 24-25;

5

murders to maintain or increase position in a racketeering enterprise, as charged in Counts 22-23 and 27-28; and maiming to maintain or increase position in a racketeering enterprise, as charged in Counts 29-30.  During its guilt phase instructions with respect to the § 924(c) offenses, however, the Court made *no reference* to the predicate offenses cited in the Second Superseding Indictment. Rather, the Court simply *read* the text of § 924(c)(1) to the jury, Tr. 3222, followed by a nearly verbatim reading of § 924(c)(3)(A), the "force" or "elements" clause, and § 924(c)(3)(B), the residual clause.  Additionally, during the guilt-phase sentencing instructions, the Court repeatedly directed the jury to refer to Mr. Tipton's verdict form to aid the jury in rendering its verdict on each count of the indictment.   See Tr. 3216 ("The verdict forms which will be provided to you by the Court, and which I will discuss in more detail in a few minutes, will list the specific charges in the indictment which you must consider with respect to each of these defendants");  Tr. 3219 ("Again, I emphasize that in your deliberations you must give individual consideration to each defendant with respect to each count charged against that defendant.  The verdict forms, as I mentioned, will assist you in this respect.");  Tr. 3221-3222  ("The verdict form will assist you in keeping track of which defendants are charged in which counts and in giving individual consideration to each defendant for each count against him or her").

At the conclusion of the penalty phase, the jury recommended death sentences for three killings in furtherance of a CCE (Counts 3, 24 and 25). The jury also recommended sentences of life for three murders in furtherance of a CCE for which the prosecution had sought the death penalty. The Court sentenced Mr. Tipton in accord with the jury's recommendation and also imposed terms of imprisonment for the non-capital counts of which Tipton was convicted.

**Direct Appeal.**

Mr. Tipton timely appealed to the United States Court of Appeals for the Fourth Circuit, where his appeal was consolidated with that of his co-defendants, James Roane and Cory Johnson. In the consolidated appeal, Mr. Tipton and his co-defendants raised approximately sixty (60) issues for review, including and not limited to issues relating to the jury selection process, to the trial proper, and to the death penalty hearing and sentencing phases. On July 8, 1996, the Fourth Circuit affirmed Mr. Tipton's convictions and sentences. *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996).[2] The United States Supreme Court denied certiorari on June 2, 1997. *Tipton v. U.S.*, 520 U.S. 1253 (1997).

---

[2] The Fourth Circuit vacated Tipton's conviction for conspiracy under 21 U.S.C. § 846 on the ground that this was a lesser included offense of his conviction under 21 U.S.C. § 848. *United States v. Tipton*, 90 F.3d 861, 891 (4th Cir. 1996).

### B.    Previous § 2255 Motion.

Following the denial of certiorari, Mr. Tipton timely filed a motion for collateral relief under 28 U.S.C. § 2255.[3]  His motion asserted: (1) that the prosecution unconstitutionally discriminated against women in the jury selection process; (2) numerous challenges to the CCE convictions, including but limited to, the trial court's jury instructions and related ineffective of counsel claims; (3) numerous claims of prosecutorial misconduct; and (4) that trial counsel was ineffective in numerous respects apart from the CCE.  This Court denied relief. *United States v. Tipton,* No. 3:92CR68 (E.D.Va. Nov. 26, 2003).

The Fourth Circuit affirmed the denial of relief. *Roane v. United States*, 378 F.3d 382 (4th Cir. 2004). The United States Supreme Court denied certiorari. *Tipton v. United States*, 546 U.S. 810 (2005).

### C.    *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. With *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011), and *James v. United States,* 550 U.S. 192 (2007) and held that the ACCA's residual clause is too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment.  Specifically, *Johnson* held that "the

---

[3]    Mr. Tipton's initial § 2255 motion was docketed under case number 98CV361.

indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson,* 135 S. Ct. at 2557.

### D.    *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively.

On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule  substantive and thus applicable retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Mr. Tipton's § 924(c) convictions cannot be sustained.

### ARGUMENT

**I.    In light of *Johnson,* Mr. Tipton's § 924(c) convictions cannot be sustained because their incorporated offenses do not qualify as "crime[s] of violence."**

9

Mr. Tipton's convictions for using or carrying a firearm during and in relation to a "crime of violence" are void because their predicate offenses cannot as a matter of law qualify as "crime[s] of violence" for purposes of § 924(c). As none of these predicate offenses meet the definition of the "force" clause, and as the residual clause can no longer provide a catch-all for such offenses, Mr. Tipton's § 924(c) convictions are no longer valid federal crimes. Their vacatur, moreover, entitles Mr. Tipton to a resentencing free from their impermissible influence upon his jury.

**A.    Section 924(c)'s residual clause is materially identical to ACCA's residual clause and therefore like ACCA's clause is unconstitutionally void for vagueness.**

The relevant portion of Section 924(c) includes two alternative clauses defining "crime of violence." The first clause, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second clause, § 924(c)(3)(B), is commonly referred to as "the residual clause." It applies to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Section 924(c)'s residual clause is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court deemed unconstitutionally vague in *Johnson. See* 135 S. Ct. at 2557. The ACCA -- which provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony," 18 U.S.C. § 924(e) -- included the following definition of "violent felony" included the residual clause struck down in *Johnson,* which reads as follows:

> [A violent felony is] [a]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i)    Has as an element the use, attempted use, or threatened use against the person of another, or
>
> *(ii)*    Is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Section 924(c)'s residual clause suffers from the same flaws that rendered the ACCA's residual clause unconstitutionally vague under the required categorical approach. As with the ACCA's residual clause, § 924(c)'s clause "require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch v. United States,* 136 S. Ct. at 1262. "The

11

'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560. Likewise, due process cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

Moreover, courts have already invalidated a residual clause identical to that in Section 924(c). The residual clause of 18 U.S.C § 16(b) is the mirror image of that of § Section 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson. See United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimayo v. Lynch,* 803 F.3d 1110 (9th Cir. 2015). Still further, at least two district courts have considered Section 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. 2015). This Court should do the same.

12

1.  ***Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

The Supreme Court began its analysis in *Johnson* by noting that the so-called categorical approach mandates the use of a two-step framework to determine whether a crime is "a violent felony" within the meaning of the ACCA. *Johnson,* 135 S. Ct. at 2557, 2562. As the Seventh Circuit described it: "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's . . . case." *Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557). The second step also depends on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.*

But this required approach to the ACCA's residual clause "conspire[d] to make it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557. The first step is problematic, the *Johnson* Court explained, because too much uncertainty exists about what constitutes the "ordinary case" of a crime. *Id.* "[T]he residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. In fact, the Court explained further, statistical analysis of reported cases, Google, and gut instinct are all equally unreliable in identifying the

13

"ordinary case." *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing *en banc*)).

The second step is also fatally flawed, as even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause -- namely, the "serious potential risk of *physical* injury." Rather, as with the first step, the Court's analysis turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson,* 135 S. Ct. at 2558. Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561. But because risk assessment under the ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague. The indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court. *Id.* at 2558.

*Johnson* thus upended not just the ACCA's residual clause, but the "ordinary case" analysis compelled by such a statutory framework. In other words, as the only way to apply the residual clause is to use the "ordinary case" analysis, and as the "ordinary case" analysis is impossible to apply in a constitutional manner, the ACCA's residual clause is void. For the reasons discussed below, the same is true for Section 924(c)'s residual clause as well.

### 2. For the reasons identified in *Johnson*, § 924(c)(3)(B) also is unconstitutionally vague.

While Section 924(c)'s residual clause does not share the exact wording as that of the ACCA, the two clauses function in the same way, and an application of the same constitutional analysis which voided the ACCA's residual clause for vagueness applies with equal force to that of Section 924(c). In the first place, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence -- including 18 U.S.C. § 16(b), which, as noted above, is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *Roberts v. Holder,* 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis).

Further, while the risk at issue in the ACCA is risk of injury -- as compared to the risk at issue in Section 924(c), which is that physical force will be used --

15

both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

To apply the "ordinary case" method to Section 924(c), courts must follow the same two-step process as applied to the ACCA. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such an "ordinary case." As the Fourth Circuit explained in the context of reviewing the (identical to § 924) § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James,* 550 U.S. at 208. As long as an offense is of a type that, *by its nature,* presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). Accordingly, as noted *supra*, at least three circuits have held that because the shapeless "ordinary case" approach applies to cases under § 16(b), that statute's residual clause is void after *Johnson. See Gonzalez-Longoria,* 813 F.3d at 235; *Vivas-Ceja,* 808 F.3d at 722; *Dimayo,* 803 F.3d at 1116-17.

It follows that the same analysis applies to the identical residual clause of § 924(c). *See, e.g., United States v. Fuerte,* 805 F.3d 485, 498 (4th Cir. 2015) (applying the "ordinary case" inquiry to the § 924(c) residual clause). Section

924(c)'s residual clause, like that of § 16(b) and ACCA, accordingly suffers from the same "double indeterminacy" that the *Johnson* Court held the Due Process Clause cannot tolerate. *See Edmundson,* 2015 WL 9311983, at *4.

Indeed, in the course of litigating *Johnson,* the United States conceded that the residual clauses contained in ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause. Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States,* No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964) (Mar. 30, 2015).  The United States was correct in its analysis, and this Court should hold it here  to  the same concession.

In sum, Section 924(c), like the ACCA, requires courts to apply "ordinary case" analysis to assess the risk involved in a predicate offense. Because this analysis involves the same flawed steps that brought down the ACCA residual clause, § 924(c)(3)(B) also cannot survive constitutional scrutiny. Under the due process principles articulated in *Johnson,* Section 924(c)'s residual clause cannot be used to support a conviction under that statute.

17

Accordingly, Mr. Tipton's convictions under Section 924(c) must be overturned because the convictions turns upon a determination that the predicate crimes with which he was charged are "crime[s] of violence." And, as the following section will demonstrate, those predicate offenses qualify as crimes of violence only under the unconstitutional residual clause; they cannot categorically satisfy the remaining force or elements clause.

**B.     Mr. Tipton's predicate offenses fail to qualify categorically as "crime[s] of violence" under the force clause of section 924(c)**

**1. The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.**

In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c), courts must employ the categorical approach. *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]." *Id.* In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition. *See, e.g., United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most

18

innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has *as an element* the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical force" must involve *violent force* – that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent *to use strong physical force.*

The Second Circuit's decision that a Connecticut conviction for third-degree assault could not qualify as a "crime of violence" under the force clause is instructive. *Chrzanoski v. Ashcroft,* 327 F.3d 188, 194 (2d Cir. 2003). The Connecticut statute "required the state to prove that the defendant had intentionally

19

caused physical injury." *Id.* at 193. Nevertheless, because the statute required only

*causation* of an injury, it failed to require the use or threatened use of physical

force. *Id.* at 194. "An individual could be convicted of intentional assault in the

third degree," said the Second Circuit, "for an injury caused not by physical force,

but by guile, deception, or even deliberate omission." *Id.* at 195. The court

conceived of "numerous examples of intentionally causing physical injury without

the use of force, such as a doctor who deliberately withholds vital medicine from a

sick patient," or someone who causes physical impairment by putting a tranquilizer

in the victim's drink. *Id.*

The Tenth Circuit, too, provided support for the *Torres-Miguel* court's

decision. *United States v. Perez-Vargas,* 414 F.3d 1282 (10th Cir. 2005), involved a

Colorado third-degree assault statute that required proof of an act causing bodily

injury by means of a deadly weapon.  The Tenth Circuit found, however, that as

the statute did not necessarily include the use or threatened use of physical force, it

therefore did not define a crime of violence under the force clause. *Id.* at 1287. As

examples of Colorado third-degree assault that would not use or threaten the use of

physical force, the Tenth Circuit identified intentionally placing a barrier in front

of a car, causing an accident, or intentionally exposing someone to hazardous

20

chemicals. *Id.* at 1286. The reasoning of *Torres-Miguel* and the many cases on which it relied applies equally to Mr. Tipton's predicate offenses.

### 2. Conspiracy can never qualify as a "crime of violence" under the force clause.

Mr. Tipton's argument for relief is strengthened by the additional uncertainty created by the reliance of both of his Section 924(c) convictions upon a predicate offense -- conspiracy -- that even prior to *Johnson* could *never* qualify as a "crime of violence," under the "force" clause, no matter its object. *United States v. Melvin,* No. 13-4857 (4th Cir. Oct. 20, 2015) (finding conspiracy to commit robbery with a dangerous weapon not a violent felony); *United States v. White*, 571 F.3d 365 (4th Cir. 2009); *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007); *United States v. Gore,* 636 F.3d 728 (5th Cir. 2011); *United States v. Chandler,* 743 F.3d 648 (9th Cir. 2014) (implies conspiracy does not satisfy force clause or enumerated offenses); *United States v. Gonzalez-Ruiz*, 794 F.3d 832 (7th Cir. 2015) (finding conspiracy to commit armed robbery not violent felony); see also *United States v. Luong,* 2016 WL 1588495 (E.D. Cal. 2016) (conspiracy to commit Hobbs Act robbery not 924(c) crime of violence); *United States v. Edmundson*, __ F. Supp. 3d__ 2015 WL 9582736 (D. Md. 2015) (same).

Further, as Mr. Tipton's trial court stated in its instructions to the jury, the only two elements that must be found to convict a defendant of conspiracy are

"that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment . . . . [and] that the defendant knowingly and willfully became a member of such a conspiracy." T. 3201.  Elements of such vagueness and breadth would allow a defendant to be found guilty of conspiracy for an incredibly wide spectrum of conduct *and* culpability.   It is accordingly impossible to discern precisely what degree of responsibility the jury ultimately assigned to Mr. Tipton -- an uncertainty that undermines the reliability of his sentences to a degree that the Constitution cannot abide.

### 3. Murder or maiming to maintain or increase position in a racketeering enterprise does not qualify categorically as a "crime of violence" under the force clause.

Similarly, Mr. Tipton's convictions of murder and maiming to maintain or increase position in a racketeering enterprise cannot sustain his Section 924(c) convictions.  Again, if the "most innocent conduct" or "full range of conduct" encompassed in the statutory elements of the predicate offense do not require the intentional use of "strong physical force," *Johnson,* 559 U.S. at 140, it cannot categorically qualify as a "crime of violence."  *Torres-Miguel*, *supra*.  Although murder requires physical *injury*, its statutory elements do *not* require strong physical force.  This truth is explicitly acknowledged by the federal murder statute,

22

which serves as the relevant definition for Mr. Tipton's predicate offenses of murder to maintain or increase position in a racketeering enterprise, and which makes specific reference to poisoning.  18 U.S.C. § 1111(a).  Mr. Tipton's predicate offense of maiming to maintain or increase position in a racketeering enterprise similarly cannot qualify, as its elements can be met by causing injury and do not require the use of violent physical force.

In Mr. Tipton's case, moreover, the Court, when "explain[ing] and defin[ing]" for the jury "the meaning of certain terms found in the statute and within these instructions relating to the elements of the 1959 murders referred to as violent crimes in aid of racketeering activity," did nothing to clarify this vagueness, merely reading the two provisions of 924(c), including the unconstitutional residual clause.  T. 3223.[4]  Further, despite the trial court's repeated admonition to the jury to rely upon Mr. Tipton's verdict form to "assist" them in their deliberations, T. 3219-22, that form (attached as Exhibit 2) required no specific findings from the jury as to either the predicate offenses or the Section 924(c) offenses save that Mr. Tipton was "Guilty or Not Guilty."  See, e.g.,

---

[4] "The term 'crime of violence' means an offense that is a felony and has as one of its essential elements the use, the attempted use, or threatened use of physical force against the person or property of another, or an offense that by its very nature involves a substantial risk that such physical force may be used in committing the offense."

Exhibit 2 at 1 (Count 1; directing jury to write "Guilty or Not Guilty" as to "Conspiracy to Distribute Controlled Substance"); 4 and 6 (Counts 17-19, 24-25; directing jury to write "Guilty or Not Guilty" as to "Killing of [Victim] while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise");  5-6 (Counts 21-23, 27-28; directing jury to write "Guilty or Not Guilty" as to "Killing of [Victim] to Maintain or Increase Position in Racketeering Enterprise"); and 7 (Counts 29-30; "Maiming of [Victim] to Maintain or Increase Position in Racketeering Enterprise").

### 4. Murder in furtherance of a CCE does not qualify categorically as a "crime of violence" under the force clause.

In addition to the arguments as to why murder cannot qualify categorically as a crime of violence discussed in Section (B)(3), *supra*, the statutory definition of Mr. Tipton's predicate offenses of murder in furtherance of a CCE introduces an even broader range of potential responsibility and culpability, as it allows the conviction of anyone who "intentionally kills *or counsels, commands, induces, procures, or causes* the intentional killing of an individual . . . ."  21 U.S.C. § 848(e)(1)(a).   Accordingly, Mr. Tipton's jury would have been authorized to convict him of these offenses if he had merely *counseled* a killing -- a variation in culpability that further questions the soundness of his sentences of death, now that they are no longer buttressed by his unconstitutional Section 924(c) convictions.

24

### 5.  Conclusion

As "the full range of conduct" that constitutes conspiracy, murder and maiming does not require "violent force," those offenses cannot categorically qualify as "crime[s] of violence" under § 924(c)(3)'s force clause. *See Torres-Miguel,* 701 F.3d at 171. Even if the possibility of committing murder or maiming without the use or threat of violent force is slim, the existence of that possibility means that this Court cannot, as a matter of law, find that these crimes are "crime[s] of violence."  Accordingly, Mr. Tipton's convictions pursuant to Section 924(c) cannot stand under either of its clauses and must be vacated.

**II.      Mr. Tipton is entitled to relief under 28 U.S.C. § 2255 because his claim under *Johnson* is cognizable, timely, and satisfies the successive petition requirements of § 2255(h)(2).**

**A.      Mr. Tipton's claim is cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Tipton's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

First, for all the reasons explained above, Mr. Tipton's convictions pursuant to Section 924(c) violate due process, as they depended upon its unconstitutionally-vague residual clause.  Second, as also detailed above, the predicate offenses cannot categorically satisfy § 924(c)'s force clause. Mr. Tipton's indictment therefore failed to state an offense under § 924(c); given this, his convictions violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").  Third, Mr. Tipton's convictions exceed this Court's jurisdiction because his indictment not only failed to state a § 924(c) offense but affirmatively alleged conduct that is outside the reach of that statute.  These convictions are legal nullities entered in excess of this Court's jurisdiction that must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep

26

of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th

Cir. 1985).

### B.    Mr. Tipton's motion for relief is timely.

Section 2255(f) requires that § 2255 motions be filed within a one-year

limitations period. That period runs from the latest applicable triggering event. 28

U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was

initially recognized by the Supreme Court, if that right has been newly recognized

by the Supreme Court and made retroactively applicable to cases on collateral

review." *Id.,* § 2255(f)(3).

The Supreme Court decided *Johnson* on June 26, 2015. Mr. Tipton has filed

this application within one year of that date. Further, on April 18, 2016, the

Supreme Court expressly made *Johnson*'s new rule retroactively applicable to

cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016).

This motion therefore is timely filed.[5]

---

[5]    Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. See 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Tipton has appended this successive § 2255 motion to his application to the Fourth Circuit for permission to file it.  Per the Circuit's practice, if it

### III.  Mr. Tipton's invalid § 924(c) convictions also invalidate his death sentence.

As noted *supra*, Mr. Tipton was sentenced to death for three murders committed in furtherance of a continuing criminal enterprise -- each of which served as predicate offenses for his convictions under Section 924(c).  Mr. Tipton respectfully submits that the invalidation of his § 924(c) convictions requires that his death sentences also be set aside.

When a defendant who has been convicted and sentenced on multiple charged offenses has one conviction subsequently invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was *not* affected" by the invalid offense. *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986). The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per

---

concludes that he has made a *prima facie* showing that he satisfies § 2255(h)(2), it will issue his certification and direct the clerk of this Court to file his petition. Accordingly, if this petition is before the Court, Mr. Tipton has obtained permission to file it.

curiam) (*quoted in United States v. Starr,* 503 F. App'x 517, 518 (8th Cir. 2015) (per curiam)).

This principle applies with even greater force in the case of jury sentencing. The record in Mr. Tipton's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) count influenced the jury's decision to sentence him to death. The addition of the Section 924(c) offenses to Mr. Tipton's case directed his jury to consider not only his participation in their predicate offenses, but that these offenses were considered so egregious that they were designated as an additional and separate slate of federal felonies. Given the unparalleled need for reliability in capital sentencing, allowing Mr. Tipton's death sentences to stand despite the jury's exposure to the invalid counts and the prejudicial elements of their presence would implicate his Eighth Amendment rights.

The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 576 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. As the Court explained, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise

to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (citations and internal quotations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 585. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.* And while the prosecutor had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without express argument, there would be a possibility that the jury's belief the petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) convictions had a profoundly prejudicial impact on Mr. Tipton's case as a whole, and undermines confidence in his death sentences. Indeed, Mr. Tipton likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Tipton, it

30

was presented with an indictment alleging two additional 924(c) counts. There is a reasonable possibility that the Department's capital-case review process was skewed by the presence of the unconstitutional charges just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

In closing, Mr. Tipton notes that he is also entitled to resentencing by a jury, per the decision of the Supreme Court in *Hurst v. Florida,* 136 S. Ct. 616 (2016), The Court held that the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Court's holding in this case was unequivocal: "The Sixth Amendment protects a defendant's right to an impartial jury. This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's factfinding." *Id.* After *Hurst,* a death sentence rendered by a court is unconstitutional, and an appellate or post-conviction court that finds non-structural error in the defendant's death sentence may not engage in *post hoc* reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence. Rather, it must remand for a new penalty phase before a jury. To the extent any prior Supreme Court decisions, such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S.

738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overrules them.

The concerns raised in *Hurst* are particularly relevant in Mr. Tipton's case. There is no way to discern from the indictment, the jury instructions or the jury verdicts whether the jury found him guilty of the crimes connected with the CCE or in aid of racketeering as the "triggerman" or as someone who participated indirectly in the actual killings. The jury was broadly charged and the verdict forms give no indication what the jury reached unanimity on. In order for a court to now re-evaluate the factors the jury considered in sentencing him to death would require the court to draw conclusions about the jury's factfindings the court has no basis to make. This is impermissible following the constitutional concerns identified in *Hurst.*

Mr. Tipton accordingly submits that this Court should vacate his sentences in their entirety and order that he be resentenced before a jury.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Tipton respectfully asks this Court to vacate his conviction and sentences on Counts 20 and 26 as invalid charges under 18 U.S.C. § 924(c). Mr. Tipton further requests the following relief:

a)     That this Court vacate his death sentences and remand this case for a new penalty phase trial.

b)     That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c)     That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d)     Any other relief that may be necessary to correct Mr. Tipton's invalid conviction and sentence.

Respectfully Submitted,


/s/ Stephen Northup

| | |
|---|---|
| Stephen Northup | Gerald W. King, Jr.* |
| VSB #16547 | Ga. Bar No. 140981 |
| Troutman Sanders LLP | Jeffrey Lyn Ertel* |
| P.O. Box 1122 | Ga. Bar No. 249966 |
| Richmond, Virginia 23218-1122 | FEDERAL DEFENDER PROGRAM, INC. |
| (804) 697-1240 | 101 Marietta Street, Suite 1500 |
| (fax) (804) 698-5120 | Atlanta, Georgia 30303 |
| steve.northup@troutmansanders.com | 404-688-7530 |
| | (fax) 404-688-0768 |
| | Gerald_King@fd.org |
| | Jeff_Ertel@fd.org |
| Frederick R. Gerson | * Pro hac vice motion to be filed |
| VSB #39968 | |
| FG LAW PLLC | |
| 536 Granite Avenue | |
| Richmond, Virginia 23226 | |
| (804)482-1121 | |
| fred@fgattorney.com | |


Counsel for Richard Tipton, III.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 20th day of May, 2016, a copy of the foregoing Application for Authorization to File a Successive Motion Under 28 U.S.C. § 2255 was served via the CM/ECF electronic filing system upon: Dana J. Boente, United States Attorney for the eastern District of Virginia, dana.boehte@usdoj.gov; and Brian Hood, Assistant United States Attorney for the Eastern District of Virginia, brian.hood@usdoj.gov.


/s/ Stephen Northup
Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com